UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jesse J. Gallerani,   #327920,<br><br>                              Petitioner,<br><br>vs.<br><br>Diane S. Goodstein, J.; and<br>St. George Detention Center, Dorchester County,<br><br>                              Respondent. | ) C/A No. 3:11-528-RMG-JRM<br>)<br>)<br>)<br>) Report and Recommendation<br>)<br>)<br>)<br>)<br>) |

Petitioner, Jesse J. Gallerani, proceeding *pro se*, files this action pursuant to 28 U.S.C. § 2254. Petitioner was originally incarcerated in a facility run by the South Carolina Department of Corrections (SCDC). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Judge.

I.      Factual Background

The original Petition, filed by another inmate on Petitioner's behalf, alleges that the Petitioner was released from SCDC and taken to the Dorchester County Detention Center without due process. It was alleged that the Petitioner was

> continually ... held and confined, unlawfully and illegally, in - believed - St. George Detention Center without release, in the County of Dorchester, South Carolina. At the personal and special request and urging of Diane S. Goodstein without legal, apparent, nor lawfully imposed incarcerative (sic) sentence. Without bail. With no legal nor formal authorized hearing. Without Probable Cause, and without service of a[n] Arrest Warrant alleging supposed violation of any terms of his imposed probationary sentence."

*Petition* at 7.

It was also alleged that exhaustion would be futile, and was "unnecessary when 'there is an

absence of available State corrective process' for the type and magnitude of violation and infringement at issue, or the procedures 'would be ineffective to protect the rights' of the Petitioner and secure a more immediate and speedier remedy." The case of *Laswell v. Frey*, 45 F. 3rd 1011, 1014 (6th Cir. 1995) was offered as support for this proposition, as were other cases, which were not Fourth Circuit cases, and which were decided before the Antiterrorism and Effective Death Penalty Act ("AEDPA") was passed.

On the signature page of the Petition it said, in part: "My name is Robert McCrorey, III, .... I have...knowledge of Jesse J. Gallerani's ... case....I witnessed him being loaded in that van....I heard of his predicament - and all of the lack of remedy and assistance - and I prepared this Petition... because he is NOT able to.... PLEASE ACCEPT."

Shortly after the Clerk of Court received the Petition, Petitioner Gallerani notified the Court he was living in California, where he did not appear to be incarcerated. He also sent a check to the Clerk of Court in order to obtain a copy of the Petition that had been filed on his behalf. Since Petitioner notified the Court that his address had changed, and asked for a copy of the Petition, it was presumed the Petitioner wished to pursue this matter. A review of the public index for Dorchester County revealed that Petitioner was convicted of criminal domestic violence and sentenced to ten (10) years upon the service of six (6) years followed by five (5) years of supervised release.

Petitioner was sent an Order which directed him to sign the signature page of the Petition and remit the appropriate filing fee, or move to proceed *in forma pauperis*. Petitioner signed the Petition and paid the full filing fee. A second Order was sent to the Petitioner, which included a set of interrogatories, so the Court could obtain more information about Petitioner's status. On July 1,

2011, the Petitioner filed his responses to the Court's interrogatories. Petitioner indicated that he had completed the sentence he was serving at SCDC and was no longer in their custody. Petitioner further indicated that he was taken to the Dorchester County Detention Center so his sentence could be modified. Petitioner stated that he was not currently serving another sentence and was not awaiting trial for a pending charge, but was on probation, parole, or supervised release and reported to the "California Parole" office.

II.   Discussion

    A.   Standard of Review

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition, pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996. The review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995)(*en banc*); and *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

This court is required to liberally construe *pro se* documents, *Estelle v. Gamble*, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe*, 449 U.S. 5 (1980)*(per curiam)*. Even under this less stringent standard, however, the *pro se* Petition is subject to summary dismissal. The mandated liberal construction afforded *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274,

1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

    B.    Habeas Corpus Review

The present habeas corpus petition was filed on March 15, 2011. Because Petitioner filed his Petition after the effective date of the AEDPA, this Court's review of his collateral attack on his criminal conviction is governed by the parameters set forth in the AEDPA, which amended § 2254. *Lindh v. Murphy*, 521 U.S. 320 (1997).

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b). Thus, if claims were never reviewed by the highest court in South Carolina, those claims will be barred and cannot be considered by the Court. The court's exhaustion requirements under Section 2254 are explained in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4th Cir 1997). In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.] The burden of proving that a claim has been exhausted lies with the Petitioner. The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations omitted).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first method involves a direct appeal and, pursuant to state law, a petitioner is required to state all his grounds in that appeal. *See* SCAR 207 and *Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (1976). The second method involves the filing of an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160. The applicant may allege constitutional violations in a post-conviction relief ("PCR") proceeding, but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 495 S.E.2d 426, 428 (S.C. 1998), *citing S.C. Code Ann.* § 17-27-20(a)(1), (b). A PCR applicant is also required to state all of his grounds for relief in his application. *See S.C.Code Ann*. § 17-27-90.When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *See, e.g., Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977) and *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

Petitioner's alleged exhaustion would be futile, and was "unnecessary when 'there is an absence of available State corrective process' for the type and magnitude of violation and infringement at issue, or the procedures 'would be ineffective to protect the rights' of the petitioner and secure a more immediate and speedier remedy," however, as noted above, there is not an "absence of an available State corrective process." Furthermore, the fact that Petitioner wanted "a more immediate and speedier remedy" is not relevant to the inquiry of whether or not Petitioner has availed himself of the required state remedies.

More importantly, Petitioner was seeking his immediate release from his confinement at the Dorchester County Detention Center. Since Petitioner is no longer confined there, his habeas claim is now moot. Additionally, Petitioner's original allegation concerned his transfer to another facility without due process, however, in his answers to the Court's interrogatories, Petitioner stated that he appeared before Judge Goodstein and was given a modified sentence which apparently resulted in his release from the custody of South Carolina and his transfer to the custody of the California Parole System. Thus, Petitioner's claim that he was denied due process is without merit.

In any event, there is no constitutional right for a state or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); and *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975),  Thus, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review *unless* state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 & n.1 (4th Cir. 1984)(collecting cases).

Cases previously decided in this judicial district make it clear that South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections ("SCDC") from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See*, *e.g.*, *Keeler v. Pea*, 782 F. Supp. 42, 43-44, (D.S.C. 1992), (*citing Meachum v. Fano*, 427 U.S. 215 (1976)). *See also Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978); and *Brown v. Evatt*, 470 S.E.2d 848 (S.C. 1996)(South Carolina Supreme Court held that neither state statutes creating/defining SCDC's powers nor SCDC's operational classification regulations created a liberty interest in security or custody classifications). Based on

the foregoing, Petitioner would not be entitled to a hearing prior to his transfer to another facility.

III.     Conclusion

Accordingly, it is recommended that the § 2254 petition in the above-captioned case be dismissed *without prejudice* and without service of process. *See* Anti-Terrorism and Effective Death Penalty Act of 1996.

                                                                    Joseph R. McCrorey
                                                                    United States Magistrate Judge

September 15, 2011
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).